## 35672. GRIFFIN v. BENTON.

Decided June 8, 1955.

*A. J. Whitehurst, C. E. Hay*, for plaintiff in error.

*B. B. Earle, Jr.*, contra.

Felton, C. J. The disposition of this case depends on whether Code § 62-601 inures to the benefit of motorists using the public highways in counties in which the stock law is in effect. This section provides: "In any county which shall adopt the stock law as provided in Chapter 62-5, no horse, mule, cow, or hog, or any other animal or animals, used or fit either for food or labor, shall be permitted to run at large beyond the limits of the lands of its owner or manager." The plaintiff in error contends that this section is only for the protection of crops from the trespass of the named animals and not for the protection and safety of motorists. It is further contended that the General Assembly when it passed the act in 1872 only intended to protect crops and could not have intended to protect motorists because automobiles were not in existence at that time.

We think the General Assembly intended for the law to protect the general public from the evils of animals running at large. It may be true that the one big evil of animals running at large in 1872 was the destruction of crops, but such fact did not preclude subsequent and additional evils from arising. "Statutes framed in general terms and not plainly indicating the contrary will be construed prospectively, so as to apply to persons, subjects, and things within their purview and scope coming into existence subsequent to their enactment." 82 C. J. S. 558, § 319; 2 Sutherland, Statutory Construction, 505, § 5014. The act does not provide that such animals as described shall not be permitted to run at large beyond the limits of the lands of its owner or manager on the lands and crops of others. It provides that such animals should not be permitted to run at large generally beyond the limits of the lands of their owners or managers. Further, when the General Assembly in 1935 adopted the Code of 1933, it amounted to a re-enactment of each section thereof as contemporary statutes. *State of Ga. v. Camp*, 189 *Ga.* 209, 210 (2) (6 S. E. 2d 299), and citations. Therefore, while the General Assembly of 1872 when enacting the original act, did not have before it the evil of stock running at large on the public highways used by automobiles, that evil was before the 1935 General Assembly when it adopted the Code of 1933. See *Gore v. State*, 79 *Ga. App.* 696, 705 (54 S. E. 2d 669). It is true that in some cases the original law instead of the Code section will be looked to in interpreting the law; however, this rule pertains to cases where the meaning of the Code section is ambiguous. *State of Ga. v. Camp*, supra, headnote 2. There is nothing ambiguous or vague about the meaning of Code § 62-601. It clearly states that, in any county which shall adopt the stock law, no described animal shall be permitted to run at large beyond the limits of the lands of its owner or manager.

The petition alleged a violation of Code § 62-601, which amounted to negligence per se, and thus alleged a good cause of action as to negligence as against a general demurrer.

The petition does not show that the plaintiff's son was guilty of such negligence as would render him the "author of his own misfortune."

The defendant in error concedes that the petition was subject to general demurrer because it failèd to show that the right of action for the son's death was in the mother. For this reason alone the court erred in overruling the general demurrer.

*Judgment reversed. Quillian and Nichols, JJ., concur.*